Nazario MORALES, Plaintiff,

v.

PLAXALL, INC., et al., Defendants.

No. 81 CV 77.

United States District Court,
E. D. New York.

July 9, 1982.

Howard Alan Kave, Newburgh, N. Y., for plaintiff.

Pfohl & Kirby, Long Island City, N. Y. by Ann Pfohl Kirby, for defendants.

## MEMORANDUM OF DECISION AND ORDER

NEAHER, District Judge.

This is an action brought by Nazario Morales, a former employee of defendant Plaxall, Inc. ("Plaxall"), to recover employment benefits allegedly due under defendant's profit sharing plan ("the Plan"), which was established under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001—1461. Jurisdiction is based on 29 U.S.C. § 1132(e). The action was

tried upon the facts without a jury, and the following constitute the Court's findings of fact and conclusions of law. F.R.Civ.P. 52(a).

Plaintiff Morales was employed from March 21, 1965 until July 22, 1977 as a mechanic in Plaxall's plastics factory. On the latter date, Morales was discharged, prior to the normal retirement age of 65, after admitting that he had machined two pieces of angle iron for his personal use from materials owned by Plaxall. Both prior and subsequent to his discharge, Morales had inquired of his employer as to his rights under the Plan, which provides for distribution of pension benefits to Plaxall employees. He was advised that an eligible employee was entitled to benefits upon reaching the retirement age or upon disablement. At no time was Morales informed by defendants that he had a right to receive benefits upon termination of employment prior to reaching age 65.

There is no dispute that on the day of his discharge Morales possessed a 100% vested interest in the Plan, based upon his twelve years employment with Plaxall, nor that he is entitled to full payment of benefits under the Plan together with accrued interest. In fact, all monies claimed by Morales, with the exception of attorney's fees, have been segregated in a trust account bearing his name. The sole issue before the Court concerns the *timing* of release of these funds, which in turn depends upon a determination as to which version of the Plan governs the distribution of Morales' vested interest.

The Plan was originally adopted on October 31, 1960. Certain amendments were executed on December 12, 1960, and the Plan was substantially revised on October 31, 1976. Several modifications of the Plan as restated in 1976 were effected during the following year, but the record does not indicate when the latter amendments were properly executed and formally adopted.[1] Nevertheless, the Court finds as a matter of

fact that the final amendments to the Plan became effective subsequent to the date of Morales' termination.

The crux of the present controversy arises out of four words which appeared in the Plan as amended in 1976 which were not present in the Plan from 1960 to 1976 nor from the time the 1977 amendments became effective. The four words are "or termination of employment" as they appear in § 6.04 of the 1976 version:

*"Time of Payment of Benefits*

Payment of benefits shall be made or shall commence, unless the Participant elects otherwise, not later than sixty (60) days after the close of the Plan Year in which occurs the Participant's retirement, death, disability or termination of employment. Such election shall be in writing specifying the benefit and the time payment is to be made." Pl. Exh. 1, § 6.04.

Thus, unlike any other version of the Plan, the 1976 version provided for early payment of benefits upon a participant's termination prior to the normal retirement age. This version was executed in October 1976 and was formally adopted by the Board of Directors of Plaxall on December 30, 1976 in order to conform the Plan to the participation and vesting requirements of ERISA. It was submitted to the Internal Revenue Service ("IRS") on June 30, 1977, approximately three weeks prior to Morales' termination, to qualify the Plan for certain tax exemptions. The IRS approved the Plan on January 23, 1978; however, the version approved did not contain the "termination of employment" provision, which had been deleted pursuant to a letter dated November 3, 1977 from Plaxall to the IRS. Pl. Exh. 5.

Defendants argue that the 1976 amendments never had legal effect on the Plan. They contend that Plaxall never intended to include the additional provision in § 6.04,

---

**1.** Section 13.1 of the Plan from 1960 to 1976 provided that any amendment "shall become effective upon delivery of a written instrument, executed by order of the Board of Directors, to the Trustee and the endorsement of the Trustee

of its receipt." Def. Exh. C, § 13.1. Similarly, section 12.03 of the Plan as restated in 1976 provided that amendments become effective upon due execution and delivery to the trustee. Pl. Exh. 1, § 12.03.

and that it was the product of haste and oversight in the hurried attempt to conform the Plan to ERISA and Internal Revenue Code requirements prior to the June 1977 deadline imposed by the IRS. Further, the 1976 version was drafted by an outside professional pension service corporation and was never published to any employee, including Morales; therefore, defendants argue, it never rose to the level of an offer to a unilateral contract, but instead comprised a mere "draft" for submission to the IRS.

■ As a starting point for analysis, it is clear that § 6.04 of the 1976 version of the Plan is consistent with § 206(a) of ERISA, 29 U.S.C. § 1056(a). Section 206(a) protects a participant's right to benefits by establishing age 65 as the *latest* possible trigger for payment of benefits, leaving the employer free to set an earlier date under its ERISA plan:

"Each pension plan shall provide that unless the participant otherwise elects, the payment of benefits under the plan to the participant shall begin not later than the 60th day after the latest of the close of the plan year in which—

(1) the date on which the participant attains the earlier of age 65 or the normal retirement age specified under the plan,

(2) occurs the 10th anniversary of the year in which the participant commenced participation in the plan, or

(3) the participant terminates his service with the employer."

See generally, *Fine v. Semet*, 514 F.Supp. 34, 41 (S.D.Fla.1981); *Denzer v. Purofied Down Prod. Corp. Profit-Sharing & Retirement Plan*, 474 F.Supp. 773, 775 (S.D.N.Y. 1979).

Beyond the 1976 version's consistency with an underlying purpose of ERISA, the provision for payment of benefits upon termination is also consistent with the scheme of the original version of the Plan. From 1960 to 1976, payment of benefits prior to age 65 was *always* permissible, because the trustees of the Plan were authorized to release vested benefits to a former employee prior to his reaching the normal retirement age:

"Time of Distribution.—

No distribution to a Participant whose employment is terminated otherwise than by death, retirement ('normal' or 'early' retirement as defined in Section VI) or dismissal shall be made until the Participant reaches his normal retirement date. However, if the Trustees deem it advisable, in their sole discretion that such former Participant's vested share shall be distributed earlier than the normal retirement date, the Trustees may direct that such share be distributed at such times and in such manner they determine." Def. Exh. C § 10.2.

Defendants' argument is further weakened by Plaxall's communications with Pension Service Corp., the consulting service responsible for drafting the 1976 version of the Plan. From documentary evidence offered at trial by defendants, it appears that several pages of the 1976 version were revised after Board adoption of the Plan but before submission to the IRS. By letter dated March 26, 1977, James M. Pfohl, vice-president of Plaxall, expressed concern that the amendments to the Plan too drastically departed from the original format. Def. Exh. H. Subsequently, by letter dated May 27, 1977, Pension Service Corp. sent to Plaxall eleven revised pages of the Plan, to be substituted "in accordance with our discussions and correspondence." Def. Exh. A. Included within those pages was the page on which § 6.04 reads in entirety, yet the additional provision for payment of benefits upon termination remained intact. Plaxall's failure to delete the additional provision during a period in which Plaxall and the consulting firm scrutinized that portion of the Plan justifies the inference that inclusion of the words "or termination of employment" was intentional, not inadvertent. The consistency of the 1976 version of the Plan with § 206(a) of ERISA, as well as with the original language of the Plan, firmly buttresses the instant conclusion.

■ Defendants' argument that the 1976 version of the Plan was never "of-

fered" to Morales avoids the essential fact that a binding contract existed between the parties prior to 1976. It is well accepted that a "pension plan is a unilateral contract which creates a vested right in those employees who accept the offer it contains by continuing in employment for the requisite number of years." *Hurd v. Illinois Bell Tel. Co.*, 234 F.2d 942, 946 (7th Cir.), *cert. denied sub nom. Seybold v. Western Elec. Co.*, 352 U.S. 918, 77 S.Ct. 216, 1 L.Ed.2d 124 (1956). *Accord, Denzer v. Purofied Down Prod. Corp. Profit-Sharing & Retirement Plan, supra*, at 776; *Hardy v. H. K. Porter Co.*, 417 F.Supp. 1175, 1183 (E.D.Pa.1976), *aff'd in part, rev'd in part*, 562 F.2d 42 (3rd Cir. 1977). Upon Morales' performance of the conditions of the offer, *i.e.*, completion of ten years of service, his entitlement to benefits vested. See *Hardy v. H. K. Porter Co., supra*, 417 F.Supp. at 1183. In other words, in March 1975, Morales' performance of his obligations constituted an acceptance of Plaxall's offer and bound defendants to their unilateral promise. At that point, the only remaining question concerned *when* payment would ensue under the Plan. Pursuant to the 1960 version, Morales was entitled to payment upon death, disability, reaching age 65 or the trustees' discretionary decision to distribute the benefits at an earlier date. While the right to payment at these times could not have been altered subsequent to 1975 without Morales' consent, see *Allied Chem. & Alkali Workers v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 181, n.20, 92 S.Ct. 383, 398, n.20, 30 L.Ed.2d 341 (1971), the 1976 version maintained these rights while expanding Morales' right to choose an earlier payment date. Common sense dictates that an employee need not consent to an employer's formal adoption of an amendment which allows the employee to elect an earlier date for distribution of vested benefits. Clearly, under the 1976 amendment, terminated employees remained free to defer payment until age 65. To require pre-termination consent to the option in the circumstances of this case would be contrary to the employee-pensioner rights ERISA is designed to protect.

■ Further, the fundamental issue confronting the Court is whether the 1976 version of the Plan had legal effect as of the date of Morales' discharge. If so, the "termination of employment" provision would allow plaintiff to elect for distribution of his vested benefits at the close of Plaxall's fiscal year 1977. See Pl. Exh. 1, §§ 1.17, 6.04. Several reasons compel an affirmative resolution of this issue. First, the effective date of the 1976 amendments is stated as October 31, 1976. *Id.*, § 1.08. Second, the Plan as amended in October 1976 was duly executed by the president of Plaxall, "as conclusive evidence of the adoption of the restated plan." *Id.* at 26. Third, at a special meeting of the Board of Directors of Plaxall on December 30, 1976, the amended Plan was formally adopted. Pl. Exh. 3. Fourth, according to the Plan as written from 1960 to 1976, any amendment became effective upon delivery of a duly executed written instrument to the trustees of the Plan. See note 1. Since the Plan as restated in 1976 was signed by two trustees, and "the Corporation caused" the instrument to be executed by the president of Plaxall, Pl. Exh. 1, at 26, no doubt remains that the 1976 amendments were effective from October 31, 1976 until further amendments were properly adopted subsequent to the date of Morales' termination. Therefore, payment of plaintiff's vested benefits should have commenced no later than sixty days after the close of Plaxall's fiscal year 1977.

■ Turning to plaintiff's request for an award of attorney's fee and costs pursuant to 29 U.S.C. § 1132(g)(1), which provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party," the Court is of opinion that defendants' conduct both prior to and during litigation of this matter justifies such an award. In determining the propriety of an award of attorney's fees, this Circuit recognizes five factors to be considered: (1) the absence of a common benefit on a group of pension plan participants; (2) the degree of defendants' bad faith in withholding the distribution of benefits; (3) the ability of the parties to satisfy an award; (4) the

deterrence effect of an award on future litigants; and (5) the meritoriousness of the defense. *Ford v. New York Central Teamsters Pension Fund*, 506 F.Supp. 180, 183 (W.D.N.Y.1980), *aff'd*, 642 F.2d 664 (2d Cir. 1981) (*per curiam*).

In view of these considerations, an award of fees and costs is appropriate. Defendants possessed no legitimate reason for denying plaintiff prompt payment of his vested benefits subsequent to his discharge. The Plan then in effect allowed a vested participant to opt for early payment, and it appears that defendants' refusal resulted solely from residual antagonism toward plaintiff created by his pro-union efforts during the latter period of his employment. Indeed, any justification arising out of the trustees' duty to protect the interest of the other participants in the Plan was stripped by the segregation of plaintiff's funds from the corpus of the trust. Defendants thus forced plaintiff into an unnecessary litigation, without which attorney's fees would not be an issue. Further, five years have elapsed since plaintiff's discharge, yet defendants refused to tender an offer of judgment until four months prior to trial. While defendants were willing to accept liability for plaintiff's claim for benefits, they declined to tender any portion of the substantial litigation fees and costs incurred up to that point. Thus, defendants not only caused but also perpetuated this needless litigation. Finally, regarding the parties' relative financial resources, plaintiff's limited means indicate that the judgment rendered herein would constitute an empty victory absent an award of attorney's fees; whereas, defendants appear fully able to satisfy such an award.

To effectuate the underlying policy of ERISA, *viz.*, protection of vested rights under employee benefits plans, and in consideration of the evidence adduced at trial, the Court hereby awards judgment for plaintiff on his claim for release of all monies now standing in his segregated trust account, and on his claim for a reasonable attorney's fee and costs in the amount of $5,600. The Court further awards judgment to defendants on their counterclaim for misappropriation of material belonging to Plaxall, in the amount of $200.00.

SO ORDERED.