Donald BACHELDER, et al.,
Plaintiffs, Appellees,

v.

COMMUNICATIONS SATELLITE COR-
PORATION, et al., Defendants,
Appellants.

No. 87–1499.

United States Court of Appeals,
First Circuit.

Heard Nov. 4, 1987.

Decided Jan. 21, 1988.

William J. Kayatta, Jr., with whom
Pierce, Atwood, Scribner, Allen, Smith &
Lancaster, Portland, Me., was on brief, for
defendants, appellants.

Robert Edmond Mittel with whom Mi-
chael P. Asen, Mittel & Hefferan, Portland,
Me., Paul R. Dumas, Jr., and Cloutier,
Joyce, Dumas & David, Rumford, Me.,
were on brief, for plaintiffs, appellees.

Before CAMPBELL, Chief Judge,
BREYER and TORRUELLA, Circuit
Judges.

TORRUELLA, Circuit Judge.

This is an appeal from a summary judg-
ment in a class action challenging the pro-
cedure followed in a cash distribution from
a stock ownership plan. Judgment was
rendered and entered solely on the issue of
breach of fiduciary and statutory duties in
the administration of an Employee Stock
Ownership Plan ("ESOP"), on the grounds
that plan participants did not receive the
full amount to which they were entitled.
We vacate and remand for entry of judg-
ment for defendants-appellants.

*Background*

*The Plan*

In 1976 the Board of Directors of Com-
munications Satellite Corporation ("Com-

sat") adopted an employee stock ownership plan ("the Plan") under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq.* (ERISA). The Plan is administered and managed by a Benefit Plan Committee and by a trust company (jointly, "the fiduciaries"). Under the terms of the Plan the trust company is required to invest all but a negligible portion of the Plan assets in actual shares of stock. Each participant has a vested, nonforfeitable right to a number of shares computed according to formulas set out in the Plan. Upon retirement, job termination, or participation in the program for seven years, participants are entitled to receive their portions of the accumulated assets. Participants can choose to receive the distribution either in shares of stock or in cash.

The Plan document does not specify the date upon which shares of stock are to be converted into cash for those employees who elected to receive cash payments. The only specific reference to the cash payment system in the Plan states that "to effect such distributions, the Committee may direct the Trustee to sell the appropriate number of shares of Corporation Stock on the open market." Comsat Plan § 7.5. The procedures actually followed in 1983, the relevant year for this appeal, resulted from several modifications of the 1976 Plan. By 1983 the Committee and the trustees had made several distributions to retiring and terminating employees and had established clear procedural guidelines.

Comsat distributed to Plan participants a Summary Plan Description ("SPD") as required by ERISA, 29 U.S.C. § 1022 (1982).[1] The 1983 SPD stated that the Plan was governed by the text of the Plan document and the trust agreement. It also included,

as suggested by regulations issued under ERISA (29 CFR § 2520.101–1 *et seq.* (1987)), an example of the mechanics of cash distributions under the Plan:

> Let's say, for example, that for 1976 your account was credited with 20 shares of COMSAT stock that were worth $700 at that time. During the 84 months through 1983, that portion of your account grew in value to $1,200 (due to dividends paid and reinvested as well as gains in market value). As soon as possible after the end of 1983, you'd receive a payout in shares of stock (and cash for any fraction of a share) or entirely in cash equal to $1,200.

1983 SPD at 8. The main question before us is the relevance and import we should attach to this example.

Appellees are employees who, having participated in the Plan for seven years, were entitled to a distribution at the end of 1983 and who, in response to forms distributed sometime late in 1983, indicated that they wished to receive their distribution in cash. On December 31, 1983, when appellees' entitlement to a distribution became effective, Comsat stock traded at $32.75 per share on the open market. When the fiduciaries actually sold the stock several weeks later, however, the average net proceeds per share was $25.75. It was this last amount that was used as the basis for employee distribution. Appellees sued for the difference between the two prices, finding support for their claim in the SPD example.

*Proceedings before the district court*

Appellees' suit claimed, *inter alia,*[2] that they had not received the full distribution from the ESOP to which they were entitled. The district court agreed, finding de-

---

1. **§ 1022. Plan description and summary plan description**
    (a)(1) A summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries.... The summary plan description shall ... be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan....

2. The second cause of action alleged a breach of fiduciary duty by failing to sell their shares of stock within a reasonable period of time; the third alleged breach of an employment contract formed in part by the Plan and the SPD. The second cause of action, focusing on the timeliness of appellants' acts, was settled out of court and forms no part of this appeal. The third cause of action was dismissed by stipulation after judgment was entered on the first cause of action.

fendants-appellants liable for a failure to comply with a term of the Plan clearly manifested in a formal plan description distributed to participants.

The district court found that the SPD "unambiguously promises that participants who elect to receive a cash distribution will have their stock converted to cash at its value on December 31, 1983 and paid to them as soon as possible thereafter." *Bachelder v. Communications Satellite Corp.*, 657 F.Supp. 423, 425 (D.Me.1987). In a footnote, the court found that the principle of deference to trustees' decisions, as stated in *Jestings v. New England Telephone & Telegraph Co.*, 757 F.2d 8 (1st Cir.1985), and *Rueda v. Seafarers Int'l Union of North America*, 576 F.2d 939 (1st Cir.1978), was not applicable in the present case because "the Plan's [SPD's] language is not ambiguous and ... it cannot reasonably be interpreted in the manner urged by the Defendants." 657 F.Supp. at 425 n. 2.

The court further found that the SPD was binding on appellants, based on ERISA, 29 U.S.C. §§ 1104(d), 1132, the common law of trusts as stated in Restatement (Second) of Trusts § 4 comment a (1959), and case law from other courts of appeals, district courts and state courts.[3]

The court dismissed arguments addressing absence of reliance, reasoning that reliance is only relevant in the context of a failure to report accurately the terms of the Plan. This case, the court stated, addresses performance under the Plan. *Bachelder*, 657 F.Supp. at 428, distinguishing *Govoni v. Bricklayers, Masons & Plasterers Int'l Union of America, Local 5 Pension Fund*, 732 F.2d 250 (1st Cir.1984).

## Discussion

A pension plan adopted under ERISA imposes on the fiduciaries general and specific duties created by the statute and by the terms of the plan itself. Under the terms of the Comsat Plan each participant has at all times "a fully vested and nonforfeitable interest in his account." Comsat Plan, § 6.5. The cash distributed in lieu of shares has to reflect as closely as possible the vested stock distributed. Otherwise, the fiduciaries might have to distribute cash resulting from the conversion of other participants' vested stock interests. Accordingly, Comsat had to value the exact amount of stock allotted to one individual and convert that amount into cash. Defendants required six to eight weeks to expedite these two steps.[4]

## The Plan and SPD

The law in this circuit, as in other circuits, is that, under ERISA,

"[w]here both the trustees of a pension fund and a rejected applicant offer rational, though conflicting, interpretations of plan provisions, the trustees' interpretation must be allowed to control." *Miles v. New York State Teamsters Conference Pension and Retirement Fund Employee Benefit Plan*, 698 F.2d 593, 601 (2d Cir.), cert. denied, [464 U.S. 829], 104 S.Ct. 105, 78 L.Ed.2d 108 (1983); see also *Ponce v. Construction Laborers Pension Trust for Southern California*, 628 F.2d [537] at 542 [ (9th Cir.1980) ] ("It is for the trustees, not judges, to choose between various reasonable alternatives."); cf. *Palino v. Casey*, 664 F.2d 854, 858 (1st Cir.1981) ("In judging the actions taken by trustees in the course of managing an employment benefit plan, our inquiry is limited to determining whether the actions were arbitrary and capricious in light of the trustees' responsibility to all potential beneficiaries."); *Rueda v. Seafarers International Union of North America*, 576 F.2d 939, 942 (1st Cir.1978) ("Unless the trustees' interpretation of the plan is ar-

**3.** The court cited *McKnight v. Southern Life and Health Ins. Co.*, 758 F.2d 1566 (11th Cir.1985); *Gors v. Venoy Palmer Market Inc.*, 578 F.Supp. 365 (E.D.Mich.1984); *Cooke v. Carter Hawley Hale Stores, Inc.*, No. 85C–1638, slip op. (N.D.Ill. July 2, 1986) [Westlaw, DCT Database, 1986 WL 7655]; and *Duldulao v. Saint Mary of Nazareth Hosp.*, 115 Ill.2d 482, 106 Ill.Dec. 8, 505 N.E.2d 314 (1987).

**4.** The timeliness of the appellants' acts is not in issue before us, so we must assume that the time actually used was reasonable and focus on performance under the Plan and SPD.

bitrary and capricious, or without rational basis, it may not be disregarded."). *Govoni v. Bricklayers, Masons and Plasterers International Union, Local No. 5 Pension Fund,* 732 F.2d 250, 252 (1st Cir.1984).

*Jestings v. New England Telephone & Telegraph Co.,* 757 F.2d 8–9 (1st Cir.1985). Appellants argued below that the Plan and the SPD are subject to conflicting interpretations and that their interpretation had to be followed unless found to be arbitrary and capricious. Using traditional trust analysis, the court found that there is no "reasonable alternative" or conflicting interpretation in this case, since the Plan is silent and the SPD unambiguous. Thus the court found that the SPD was a governing document.

We disagree on both counts: the SPD is ambiguous and the Plan is not silent on the timing of cash distributions. The relevant language in the SPD example is:

> During the 84 months through 1983, that portion of your account grew in value to $1200.... As soon as possible after the end of 1983, you'd receive a payout in shares of stock ... or entirely in cash equal to $1200.

We may agree that the language of the example tends towards the conclusion that the value to be distributed is that of the stocks at the precise end of the year. However, this reading would produce the anomalous result of compelling the trustees to sell one beneficiary's stock to pay off another. In a constantly declining market this would rapidly deplete the plan's resources thus violating the fiduciaries' "responsibility to all potential beneficiaries." *See Rueda v. Seafarers Int'l Union, supra.* This tension between language and Plan function renders the example ambiguous.

Neither is the Plan silent. A plan must be interpreted in light of its apparent purposes, its structure and its history. *See, e.g., Jestings, supra,* 757 F.2d at 10; *Govoni v. Brick Layers, Masons & Plasters Int'l Union of America, Local No. 5 Pension Fund,* 573 F.Supp. 82, 87 (D.Mass.

1983), *aff'd,* 732 F.2d 250 (1st Cir.1984); *see generally Stewart v. Nat'l Shopmen Pension Fund,* 795 F.2d 1079 (D.C.Cir.1986) (fund trustees can take no action which is arbitrary and capricious in light of all the circumstances involved). Given that the Plan defines the rights of all participants as *vested* rights, its possible courses of action must be seen in that light. As appellants propose, the Plan language and structure preclude the suggestion that the stock-to-cash conversion would be on December 31. The event which triggered the need to make an 84–month cash distribution was the filing of a written request by a qualified participant. Comsat Plan, § 7.1. Such a request could not be effective until the last day of the Plan year. *Id.* The distribution would then be made as soon as practicable after the event causing the distribution. Practicability depends on the administrative steps required to compute the exact apportionment of shares and to sell them in the market. It is undisputed that the six to eight weeks required for these steps was reasonable.

Unless the valuation and sale process could be shortened to a few days' time, any other conversion procedure would entail a high risk of disbursing funds from shares allotted to other participants. Since the Plan created vested rights, any adverse effect on other participants' rights would expose fiduciaries to allegations of breach of fiduciary duties. We review for arbitrariness in the light of the trustees' responsibility to all potential beneficiaries. *Rueda v. Seafarers Int'l Union of North America,* 576 F.2d 939, 942 (1st Cir.1978). We therefore find that the structure and constraints of the Plan sufficiently address the timing of conversion to cash. The procedures chosen may not have been the most expeditious, but were clearly rational.

*Reliance*

One might argue that, even if the Plan itself does not permit recovery, the plaintiffs should still recover because the SPD might have led them reasonably to think that the Plan's terms were otherwise. Appellees cannot recover on the basis of such a theory, however, because appellees did

not show significant reliance or even the possibility of prejudice flowing from the SPD. *See Govoni, supra,* 732 F.2d 250, 252 (1st Cir.1984). All the cases cited by the district court for the proposition that the SPD was a document governing relief require reasonable or significant reliance on the secondary document. *See McKnight v. Southern Life and Health Ins. Co.,* 758 F.2d 1566, 1570 (11th Cir. 1985) ("Unfairness will flow to the employee for reasonably relying on the summary booklet."); *Gors v. Venoy Palmer Market, Inc.,* 578 F.Supp. 365, 369 (E.D.Mich.1984) ([Plaintiff terminated his employment relying on erroneous information in a SPD], "the consequences resulting from misrepresentation might be worse than those resulting from failure to speak at all."); *Cooke v. Carter Hawley Hale Stores, Inc.,* No. 85C–1683, slip op. (N.D.Ill. July 2, 1986) [Available on WESTLAW, 1986 WL 7655][5] ("[A]lthough Cooke has claimed that she was misled into believing her medical coverage started on the first day of employment, she has failed to produce any evidence that she took or failed to take any actions as a consequence."); *Duldulao v. Saint Mary of Nazareth Hosp.,* 115 Ill.2d 482, 106 Ill.Dec. 8, 505 N.E.2d 314, 319 (1987) ("There is no question but that plaintiff continued to work with knowledge of the handbook provisions. Under these circumstances the handbook's provisions became binding on the employer.").

■ In the present case there is no indication of any reasonable or significant reliance.[6] The record shows that plaintiffs chose the cash distribution method for reasons unrelated to the amount that would be disbursed as cash as opposed to the amount in stock. Plaintiffs did not act based on a belief founded on the SPD example. In any event, the SPD clearly stated that stock prices vary constantly. It is worth noting that participants who opted for distribution in shares of stock were affected even more than those who opted for distribution in cash, because after the conversion into cash the prices of stock continued declining. Appellees suffered no detriment because they chose the best of the only two options. We find there was neither significant reliance nor prejudice. *See Govoni, supra,* 732 F.2d at 253. Therefore the SPD was not to be considered a basis for recovery.

The acts of appellants were neither arbitrary nor capricious. Appellants interpreted the Plan rationally, in accordance with the interests of all beneficiaries. Since no issues of fact remain after our explanation of the applicable rules, we will order entry of judgment for appellants.

*Conclusion*

The SPD example was indeed unfortunate in that it may have led to confusion for some participants. However, no significant reliance flowed from that confusion, therefore plaintiffs could not make it the basis of their claim. The method of distribution was neither irrational nor arbitrary, nor clearly precluded by Plan language. Appellees received the cash distribution to which they were entitled under the Plan.

The judgment is vacated; the case is remanded to the district court for entry of summary judgment in accordance with this opinion.

*Vacated and remanded.*

**5.** We mention *Cooke* only because the district court cited it for its precedential value. We note that under the Rules of the United States Court of Appeals for the First Circuit (1979, amended January 1, 1987), Rules 14 and 36.-2(b)(2) (28 U.S.C.A. Rules and 1981–1986 Supp.), unpublished memoranda and opinions are never to be cited in unrelated cases. The policies stated in Rule 14, that in unpublished memoranda and opinions courts usually fail to disclose fully the rationale of the court's decision, and that they are not uniformly available to all persons, are equally valid to litigation before district courts.

**6.** In the record and in oral argument plaintiffs stated that they had relied insofar as they expected a higher amount of money than they actually received. There is no indication of any acts taken in reliance on this expectation. A mere expectation is not enough, the cases cited require *significant* reliance or possible prejudice.