Caradonna v. Compaq Computer          CV-98-701-B     06/22/00

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


<u>Peter M. Caradonna</u>

    v.                               Civil No. 98-701-B
                                        Opinion No. 2000 DNH 147

<u>Compaq Computer Corp., et. al.</u>


<u>MEMORANDUM AND ORDER</u>


Peter M. Caradonna claims that the Digital Equipment Corporation Disability Income Protection Plan[1] violated his rights under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002, <u>et</u> <u>seq.</u> by reducing his disability benefits to account for benefits he is receiving from the Social Security Administration ("SSA"). He also asserts that Digital violated ERISA by discharging him with the purpose of preventing him from accruing additional benefits under Digital's pension plan. Both Digital and Caradonna have filed motions for

---

[1] Digital was acquired by the Compaq Computer Corporation in 1998. Caradonna has sued both companies and their respective disability plans. <u>See</u> Am. Compl. (doc. no. 17). I refer to the corporate defendants as "Digital" and both plans as "the Plan."

summary judgment.  For the reasons described in this memorandum

and order, I grant Digital's motion in part and deny Caradonna's motion.

I.

Caradonna began to work for Digital in 1983. He was injured in a car accident in February 1993 and could not return to work until August. He worked on a part-time basis until February 1994, when he underwent surgery for the injuries he suffered in the car accident. Caradonna has not been able to work since the surgery.

## A.   Caradonna's Claim for Disability Benefits

Prior to 1992, Digital maintained an ERISA-qualified long-term disability plan that it funded entirely through payroll deductions. An employee who qualified for disability status was entitled to benefits in an amount equal to two-thirds of his base salary. The Plan required a participant receiving benefits to apply for Social Security disability benefits and provided that such benefits would be "coordinated" with benefits paid by the Plan. Accordingly, the Plan specified that an employee's

benefits would be reduced by the amount of any Social Security disability benefits that he received.

Digital made several changes to its long-term disability plan in 1992. Under the new Plan, Digital provided employees with core coverage equal to 50% of base salary and employees were entitled to purchase additional coverage to increase their total benefits to 75% or 100% of base salary. Digital announced these changes in the two publications it issued in the summer of 1992: the July 1992 Benefits Bulletin and the 1992 Selection Guide. Both documents provided the following description of the new Plan's coordination provisions:

> [U]nder the current disability plans and under the new program, if you are eligible for other income benefits (sponsored by state or federal governments), your benefits from all sources are coordinated. The coverage amount you select is a combination of the benefits from all these sources, but you will always receive at least the minimum benefit available.

Aff. of Peter Caradonna [hereinafter Caradonna Aff.] Ex. 2 at 4; id. Ex. 3 at 2.

Caradonna carefully reviewed both the July 1992 Benefits Bulletin and the 1992 Selection Guide before he enrolled in the

-4-

new Plan. In the fall of 1992, he joined the new Plan and opted to purchase additional coverage to increase his total benefits to 100% of his base salary.

Digital periodically published a summary of its employee benefit plans in a document entitled Your Benefits Book ("Benefits Book").  The January 1, 1993 edition of the Benefits Book informed beneficiaries in Chapter 2 that "[i]f you [a Digital employee] are eligible for other income protection benefits (from Workers' Compensation, state, or local governments), your benefits from all sources will be coordinated. For more information see Chapter 6."  Id. Ex. 4 at 2-4.  Chapter 6, which in prior editions had been devoted to summarizing Digital's short- and long-term disability plans, was left incomplete.  Instead, it notified employees that Digital planned to release a revised version of Chapter 6 on or about January 1, 1994.  Employees were told that they could obtain additional information concerning the Plan in the interim by contacting the U.S. People Support Network at a listed toll-free number.

Digital executed the official Plan document for its new long-term disability plan ("1992 Restatement") on September 22, 1993.  Despite Digital's delay in executing the new Plan document, the 1992 Restatement specified that it became effective

on September 28, 1992.  It also stated that an employee's right

to benefits under the Plan was

> conditioned upon his or her reimbursing the Company and/or the Trust, as the case may be, for any payment received by the Employee which was made by mistake, including the failure to offset the amount payable hereunder by the amount received by the Employee as disability or other income as provided for in Section 13(D).

Id. Ex. 5 at B-11.  Section 13(D) provided that an employee's benefits would be reduced by "the amount of any disability income benefits paid, or upon application would be entitled to be received, under the Social Security Act, Workers' Compensation or any other state or federal compulsory disability benefit act or law."  Id.

Digital published a revised edition of the Benefits Book on December 31, 1993 ("Revised Benefits Book").  The Revised Benefits Book included a completed Chapter 6 and informed employees that Plan benefits would be "offset or reduced by any benefits" a disabled employee received or was entitled to receive under the "Social Security Act (both primary and dependent benefits), not including benefits paid to your former spouse or to your children who live with your former spouse."  Defs.' Mot.

for Summ. J. (doc. no. 24) Ex. 9 at 6-14.

The Plan notified Caradonna on September 9, 1994 that his claim for long-term disability benefits had been approved. The approval letter explained that if Caradonna was awarded Social Security disability benefits, his Plan benefits would be reduced by an equivalent amount. The letter also informed Caradonna that he would be required to reimburse the Plan for any overpayments.

The SSA determined in the spring of 1997 that Caradonna had been entitled to receive Social Security disability benefits since April 1994. Accordingly, it awarded him future benefits and a retroactive lump sum award for past benefits. When the Plan learned of the SSA's award, it notified Caradonna that it would require him to reimburse the Plan in an amount equal to the lump sum distribution. Because Caradonna did not comply, the Plan began to reduce his benefit payments both to recoup past overpayments and to account for his current SSA benefits.

Caradonna timely appealed the reduction in his benefits to Digital's U.S. Employee Benefits Claim Appeals Committee. The Appeals Committee, however, denied his appeal.

B.  **Caradonna's Right to Accrue Pension Benefits**

Digital traditionally allowed disabled workers to retain their employment status until they reached retirement age. Disabled employees thus continued to accrue pension benefits even though they were unable to return to work. In contrast, Compaq discharged disabled workers if they could not return to work after 12 months. After Compaq acquired Digital in 1998, it amended its policy to provide that disabled employees for both companies would be discharged if they could not return to work after 18 months. Caradonna was discharged on April 1, 1999 pursuant to the terms of the new policy.

## II.

Summary judgment is appropriate if the record, viewed in the light most favorable to the nonmoving party, shows that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. See Fed R. Civ. P. 56(c); Commercial Union Ins. Co. v. Walbrook Ins. Co., 7 F.3d 1047, 1050 (1st Cir. 1993). A material fact is one "that might affect the outcome of the suit under the governing law."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine factual issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

If the moving party bears the burden of proof at trial, it will be entitled to summary judgment only if the material facts are not in genuine dispute and the moving party is entitled to judgment as a matter of law on the undisputed facts. See Vargas v. Santiago Cummings, 149 F.3d 29, 35-36 (1st Cir. 1998). In contrast, summary judgment will be warranted if the nonmoving party has the burden of proof unless the nonmoving party produces sufficient evidence in response to the motion to permit a judgment in its favor. See Sands v. Ridefilm Corp., No. 99-2006, 2000 WL 622842, at *3 (1st Cir. May 18, 2000); DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997).

I employ this standard of review in ruling on the parties' motions for summary judgment.

**III.**

Caradonna concedes that the 1992 Restatement unambiguously subjects SSA disability benefits to coordination with benefits payable under the Plan. Nevertheless, he argues that the Plan cannot apply its coordination provisions to him because the Plan erroneously implied in the January 1, 1993 edition of the Benefits Book that SSA disability benefits would not be subject to coordination.[2]

Caradonna's argument takes three alternate forms. First, he asserts that (i) the Benefits Book is a summary plan description ("SPD"), 29 U.S.C. § 1022(b) (Supp. II 1996) (specifying information that must be included in an SPD); (ii) the Benefits

---

[2] Caradonna also claims that his SSA benefits are not subject to coordination because he is receiving these benefits for a different disability. Because Caradonna's opening brief was not sufficiently detailed to permit me to evaluate this claim, I offered him the opportunity to defend his argument in a supplemental brief. He declined my invitation. Accordingly, I grant Digital's motion for summary judgment with respect to this count without reaching its merits. See Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 260 (1st Cir. 1999) ("A party who aspires to oppose a summary judgment motion must spell out his arguments squarely and distinctly, or else forever hold his peace. The district court is free to disregard arguments that are not adequately developed and such arguments cannot be resurrected on appeal." (internal citations omitted)).

Book, fairly read, provides that federal disability benefits such as SSA will not be subject to coordination; and (iii) a beneficiary may base a claim for benefits pursuant to 28 U.S.C. § 1132(a)(1)(B) (1994) on statements in an SPD.  See Mers v. Marriott Int'l Group Accidental Death and Dismemberment Plan, 144 F.3d 1014, 1023 (7th Cir. 1998); Sprague v. General Motors Corp., 133 F.3d 388, 400 (6th Cir. 1998).

Caradonna next argues that the Plan violated the disclosure requirements that apply to SPDs by failing to state expressly in the Benefits Book that SSA disability benefits will be subject to coordination.  He then asserts that this violation entitles him to recover his full benefits as a form of equitable relief pursuant to 29 U.S.C. § 1132(a)(3) (1994).  See Bachelder v. Communications Satellite Corp., 837 F.2d 519, 522-23 (1st Cir. 1988); Govoni v. Bricklayers Masons and Platerers Int'l Union, 732 F.2d 250, 252 (1st Cir. 1984).

Caradonna's third argument is that the Plan is estopped from subjecting his SSA benefits to coordination even if the Benefits Book is not an SPD because he reasonably relied on the Benefits

Book in purchasing disability insurance from the Plan rather than obtaining insurance elsewhere. See City of Hope Nat'l Med. Ctr. v. Healthplus, Inc., 156 F.3d 223, 230 n.9 (1st Cir. 1998); Law v. Ernst & Young, 956 F.2d 364, 370 n.9 (1st Cir. 1992).[3]

Caradonna also challenges Digital's decision to terminate him. According to Caradonna, Digital violated his rights under 29 U.S.C. § 1140 (1994) because it terminated him with the purpose of cutting off his right to continue to accrue benefits under the company's pension plan. I first examine the sufficiency of Caradonna's various claims for disability benefits and then turn to his section 1140 claim.[4]

## A. Caradonna's Benefits and Disclosure Violation Claims

---

[3] The parties disagree as to the standard of review that should govern Caradonna's claims for disability benefits. See Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Terry v. Bayer Corp., 145 F.3d 28, 37 (1st Cir. 1998). I do not resolve this dispute because I determine that the defendants are entitled to prevail on these claims even if I review them under the de novo standard.

[4] Caradonna included additional claims for relief in his amended complaint. However, he expressly abandoned these claims during oral argument on the motions for summary judgment.

Both Caradonna's benefits claim and his disclosure violation claim depend upon his assertion that the Benefits Book is an SPD for the disability plan. Because I disagree with this assertion, I grant defendants' motion for summary judgment with respect to both claims.[5]

In addition to requiring that an employee benefit plan must be governed by a "written instrument," see 29 U.S.C. § 1102(a)(1)

_____

[5] I have other reasons to doubt the viability of Caradonna's benefits and disclosure violation claims. With respect to his benefits claim, I am inclined to agree with the Third Circuit that a beneficiary cannot base a section 1132(a)(1)(B) claim for benefits on statements in an SPD. See Gridley v. Cleveland Pneumatic Co., 924 F.2d 1310, 1318 (3d Cir. 1991). While an SPD is a summary of the plan's material terms, it is not the instrument that creates the plan. Accordingly, it is difficult to see how benefits authorized by an SPD but not by the plan are "benefits due to him under the terms of his plan" as that phrase is used in 29 U.S.C. § 1132(a)(1)(B). See id.

With respect to Caradonna's disclosure violation claim, the First Circuit has suggested that benefits cannot be awarded for a disclosure violation unless the beneficiary can establish that he reasonably relied on the inadequate and misleading SPD. See Bachelder, 837 F.2d at 522-23 (requiring proof of "reasonable or significant reliance"); Govoni, 732 F.2d at 252 (requiring proof of "significant reliance" or "possible prejudice"). As I explain in the next section, Caradonna did not reasonably rely on the Benefits Book in concluding that his SSA benefits would not be subject to coordination. Therefore, it is unlikely that Caradonna could prevail on his benefits and disclosure violation claims even if the Benefits Book were deemed to be an SPD.

-16-

(1994); <u>Hicks v. Fleming Companies, Inc.</u>, 961 F.2d 537, 539 (5th Cir. 1992), ERISA obligates a plan's administrator to disclose certain information concerning the plan to its participants and beneficiaries. Two documents, an SPD and a summary of material modifications ("SMM"), operate as the primary mechanisms by which a plan administrator discharges its disclosure obligations. <u>See</u> 29 U.S.C. § 1022(a)(1) (1994). An SPD is intended to function as the "plain language summary of the plan's terms and benefits." <u>Palmisano v. Allina Health Sys., Inc.</u>, 190 F.3d 881, 888 (8th Cir. 1999); <u>Hicks</u>, 961 F.2d at 539-40. Accordingly, it must be written "in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a)(1); 29 C.F.R. § 2520.102-2(a) (1999). Every five years, assuming amendments have been made to the plan during that period, a plan administrator must provide participants with an updated SPD integrating such amendments. <u>See</u> 29 U.S.C. § 1024(b)(1) (Supp. II 1996). In the interim between the

-17-

publication of SPDs, a plan informs participants of material modifications by issuing SMMs. See id. (requiring distribution of an SMM within 210 days of the close of the plan year in which the change is adopted); 29 C.F.R. § 2520.104b-3(a) (1999). Like an SPD, an SMM must be written "in a manner calculated to be understood by the average plan participant." 29 U.S.C. § 1022(a)(1).

The First Circuit has not yet identified the criteria that must be considered in determining whether a document qualifies as an SPD. Two principal tests emerge from a review of the case law. The Fifth Circuit has concluded that a document will be treated as an SPD only if it contains "all or substantially all categories of information required" by section 1022(b) and the corresponding regulations at 29 C.F.R. § 2520.102-3 (1999). Hicks, 961 F.2d at 542 (finding proffered document was not an SPD).

The twelve categories of information required by section 1022(b) include: (1) the name and type of administration of the plan; (2) the type of plan; (3) name and address of the employer whose employees are covered by the plan; (4) the name and address of the administrator, and trustee(s) if different; (5) name and address of the person designated as agent for service of legal process, if such person is not the administrator; (6) the plan's requirements regarding eligibility for participation and benefits; (7) the circumstances which may result in disqualification, ineligibility, or denial or loss of benefits; (8) the source of the plan's financing and the identity of any organization through which benefits are provided; (9) procedures for presenting claims for benefits under the plan and remedies available for the redress of claims which are denied; (10) the date of the end of the plan year and whether records are kept on a calender, policy, or fiscal year basis; (11) the employer identification number (EIN) assigned by the IRS to the plan sponsor and the plan number assigned by the plan sponsor; and (12) a statement of ERISA rights. See 29 U.S.C. § 1022(b); 29

C.F.R. § 2520.102-3. If a document fails to conform substantially to the requirements of section 1022(b), it will be deemed to be an SPD under <u>Hicks</u> only in an exceptional case such as when a "small item of required information" is omitted through inadvertence. See <u>Hicks</u>, 961 F.2d at 542 n.17.

The Fifth Circuit employs a "bright line" test for disclosure violation claims because it is concerned that a less stringent test "would set a trap for the unwary employer who circulates benefit information in writing and at the same time would have a chilling effect on the cautious employer who might otherwise write freely to his or her employees about their benefit plans. . . . [T]here should be no accidental or inadvertent SPDs." <u>Hicks</u>, 961 F.2d at 542 (explaining that document should not be treated as an SPD if it would not be accepted by the Secretary of Labor for filing and publication).

The Third Circuit has adopted a less categorical approach to the issue. In <u>Gridley</u>, the court rejected the plaintiff's claim that an "overview brochure" summarizing her benefits qualified as an SPD because the brochure (1) referred to another document as

an SPD; (2) did not include much of the information that ERISA requires an SPD to contain; (3) contained only a perfunctory description of subjects treated in other documents that unquestionably were SPDs; and (4) was an updated version of an earlier document that unquestionably was not an SPD.  See Gridley v. Cleveland Pneumatic Co., 924 F.2d 1310, 1316-17 (3rd Cir. 1991).  Using this test, a court should consider all of the relevant circumstances in determining whether a document describing a benefits plan should be characterized as an SPD.

I need not determine whether Hicks or Gridley provides the appropriate test to resolve Caradonna's claim because the Benefits Book fails to qualify as an SPD under either test. While the Benefits Book contains some of the information required by section 1022(b), it fails to define the term disability or otherwise explain the Plan's eligibility requirements.  Nor does it contain an explanation of the circumstances in which disqualification, ineligibility, denial, or loss of benefits may occur.  Thus, the Benefits Book fails to satisfy the Hicks test because it does not include "substantially all categories of

-21-

information required" by section 1022(b) and the corresponding regulations.  See Hicks, 961 F.2d at 542.

The Benefits Book cannot to qualify as an SPD under Gridley because, in addition to omitting information that must be provided in an SPD, it plainly informed beneficiaries that Digital intended the Benefits Book to be a work-in-progress with respect to the disability plan and that it would not be completed until the end of the year.  Chapter 2 referred readers to Chapter 6 for detailed information concerning the Plan.  Chapter 6, in turn, stated that the chapter was in the process of being rewritten.  See Caradonna Aff. Ex. 4 at 2-3, 2-4, 6-1.  Chapter 6 further instructed employees that they should contact the U.S. People Support Network "for current information on Digital's disability program."  Id. Ex. 4 at 6-1.  These statements persuasively demonstrate that Digital did not intend the Benefits Book to serve as an SPD for its new Plan.  Nor would it have been reasonable, in light of these statements, for beneficiaries to treat the Benefits Book as a comprehensive summary of the Plan's terms.  Thus, the Benefits Book does not qualify as an SPD for

the disability plan under either <u>Hicks</u> or <u>Gridley</u>.[6]  Digital

therefore is entitled to summary judgment on both Caradonna's

benefits claim and his disclosure violation claim.[7]

**B.    <u>Caradonna's Equitable Estoppel Claim</u>**

The First Circuit has not decided whether a beneficiary may

maintain an equitable estoppel claim under ERISA.  <u>See</u> <u>City of</u>

<u>Hope Nat'l Med. Ctr.</u>, 156 F.3d at 230 n.9; <u>Law,</u> 956 F.2d at 370

n.9.  Those courts in other circuits that have recognized such

---

[6]  Caradonna argues that defendants cannot deny that the Benefits Book is an SPD because they referred to the document as an SPD in correspondence responding to Caradonna's requests for Plan-related documents.  Caradonna has not alleged that defendants intentionally mischaracterized the Benefits Book as an SPD.  Nor does he claim that he detrimentally relied on the defendants' alleged misstatement.  Under these circumstances, it would not be appropriate to treat defendants' alleged misstatement as a binding admission.

[7]  Caradonna alternatively argues that the Benefits Book is an SMM for the Plan even if it is not an SPD.  Assuming, without deciding, that a beneficiary may base a claim for benefits on statements in an SMM, I nevertheless reject Caradonna's argument. First, the Benefits Book does not qualify as an SMM for the same reasons that it fails to qualify as an SPD.  Second, even if the Benefits Book qualified as an SMM, Caradonna would have to prove that he reasonably relied to his detriment on the Benefits Book. <u>See</u> <u>Harris v. Blue Cross and Blue Shield of Mo.</u>, 995 F.2d 877, 880 n.3 (8th Cir. 1993).  As I explain later in this memorandum and order, Caradonna cannot make such a showing.

-23-

claims, however, require a plaintiff to prove that: (1) the plan misrepresented material facts; (2) the plan was aware of the true facts when it made the misrepresentations; (3) the beneficiary reasonably believed that the plan intended that he rely on the misrepresented facts; (4) the beneficiary is unaware of the true facts; and (5) the beneficiary reasonably relied to his detriment on the misrepresentations. See Sprague, 133 F.3d at 403; Smith v. Hartford Ins. Group, 6 F.3d 131, 137 (3d Cir. 1993); Mauser v. Raytheon Co. Pension Plan for Salaried Employees, 31 F. Supp.2d 168, 174 (D. Mass. 1998). In addition, the First Circuit has suggested *in dictum*, and other circuits have held, that an estoppel claim cannot succeed in the ERISA context unless both the plan provision at issue is ambiguous and the plan's representations concerning the ambiguous term are reasonable. See Law 956 F.2d at 369-70, 371-72; see also Katz v. Comprehensive Plan of Group Ins., Alltel Pension and Benefits Comm., 197 F.3d 1084, 1090 (11th Cir. 1999); Sprague, 133 F.3d at 404; Alday v. Container Corp. of Am., 906 F.2d at 660, 666 (11th Cir. 1990). I assume without deciding that an equitable estoppel

claim is cognizable in the ERISA context if it satisfies these requirements.

Caradonna's equitable estoppel claim fails because he cannot establish that he reasonably relied on the Benefits Book in failing to purchase better disability coverage elsewhere. Caradonna concedes that he understood that the Plan provided for the coordination of federal benefits before Digital amended it in 1992. See Caradonna Dep. Test. at 80-81; Caradonna Aff. ¶ 8. He also admits that he carefully reviewed both the July 1992 Benefits Bulletin and the 1992 Selection Guide before he decided to participate in the new Plan. See Caradonna Dep. Test. at 81-83; Caradonna Aff. ¶ 9. These documents unambiguously informed him that federal benefits such as SSA disability benefits would be subject to coordination in the same manner that such benefits had been subject to coordination under the prior Plan. See Caradonna Aff. Ex. 2; Id. Ex. 3. Given the unambiguous statements in these documents concerning the way in which benefits were to be coordinated under the new Plan, it was not reasonable for Caradonna to conclude from the Benefits Book that

-25-

his SSA benefits would not be subject to coordination.  This is especially true given that the Benefits Book did not purport to be a comprehensive summary of the Plan.  To the extent that the Benefits Book conflicts with the July 1992 Selection Guide and the 1992 Benefits Bulletin, Caradonna reasonably should have followed the suggestion in the Benefits Book that he contact the U.S. People Support Network to resolve the conflict.  He was not free under the circumstances to choose "to believe the more appealing of the two conflicting statements."  See McMahon v. Digital Equipment Corp., 162 F.3d 28, 39 (1st Cir. 1998) (applying Massachusetts law).  Accordingly, I reject Caradonna's equitable estoppel claim.

## C.   Caradonna's Section 1140 Claim

Caradonna alleges that Digital violated 29 U.S.C. § 1140 by discharging him with a purpose of interfering with his ability to continue to accrue benefits under Digital's pension plan.[8]  See Am. Compl. ¶¶ 107-13.

Section 1140 makes it unlawful to "discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan."  29 U.S.C. § 1140.  The ultimate inquiry in a section 1140 case is "whether the employment action was taken with the specific intent of interfering with the

---

[8]  Accrual of additional pension benefits has been recognized as a legitimate basis for a section 1140 claim. See Gibson v. Mut. Life Ins. Co. of N.Y., No. 93-2099, 1994 WL 136984, at *2 (4th Cir. Apr. 18, 1994)(per curiam); Conkwright v. Westinghouse Elec. Corp., 933 F.2d 231, 236, 238 (4th Cir. 1991) (holding that section 1140 "extends to claims by vested employees for intentional interference with their ability to accrue additional benefits"); Clark v. Resistoflex Co., 854 F.2d 762, 771 (5th Cir. 1988) (leaving question open but finding that even if cognizable claim plaintiff failed to produce sufficient evidence of specific intent).  Caradonna was a vested member of Digital's pension plan. See Caradonna Aff. ¶ 31.

employee's ERISA benefits."  Barbour v. Dynamics Research Corp.,
63 F.3d 32, 37 (1st Cir. 1995).  That is, no section 1140 claim
arises if the loss of benefits was incidental to, or a "mere
consequence" of, the termination of employment; rather, to
prevail on a section 1140 claim, a plaintiff must show that the
loss of benefits was a motivating factor behind the termination
of employment.  See Lehman v. Prudential Ins. Co. of Am., 74 F.3d
323, 330-31 (1st Cir. 1996); Barbour, 63 F.3d at 37.

When direct evidence of specific intent is absent, a
plaintiff may invoke the burden shifting framework used in
employment discrimination cases to prove specific intent.  See
Barbour, 63 F.3d at 37-38 (collecting cases adopting similar
approach).  To establish a prima facie case, a plaintiff must
present "sufficient evidence from which the employer's specific
intent to interfere with the plaintiff's benefits can be
inferred."  Id. at 38.  As in the Title VII context, a
plaintiff's burden at this initial stage is minimal.  See id.

To rebut the presumption of unlawful interference that
arises from the plaintiff's proof of his prima facie case, the

defendant must present evidence of a legitimate reason – that is, "one unrelated to the plaintiff's entitlement to ERISA benefits" – for its decision to terminate the plaintiff's employment. Id. At this stage, the defendant bears a "'relatively light'" burden of production. Moreover, determining whether the defendant has met its burden does not involve a credibilty assessment. See id.

If the defendant satisfies its burden of production, the plaintiff must prove that the defendant acted with specific intent. Accordingly, to survive a motion for summary judgment, the plaintiff must "introduce evidence sufficient to support two findings: (1) that the employer's articulated reason for its employment actions was a pretext; and (2) that the true reason was to interfere with the plaintiff's receipt of benefits." Id. at 39.

Applying the burden-shifting framework to the facts of the present case, I conclude that neither party is entitled to summary judgment with respect to Caradonna's section 1140 claim. Caradonna has established his prima facie case by offering evidence suggesting that: (1) Digital changed its policy after it

was acquired by Compaq to provide that a disabled worker could not remain as an employee if he was not able to return to work within 18 months of becoming disabled; (2) Digital discharged him based on the new policy; (3) the only significant effect of the new policy was that disabled workers who formerly were allowed to accrue pension benefits during a period of disability could no longer accrue such benefits if they were unable to return to work after 18 months; and (4) Digital understood when it discharged Caradonna that he could no longer accrue pension benefits after he was discharged. See Caradonna Aff. Ex. 15. When this evidence is viewed in the light most favorable to Caradonna, it is sufficient to permit a reasonable finder of fact to conclude that Digital discharged Caradonna with a purpose of interfering with his rights under the pension plan. Thus, Caradonna has established his prima facie case.

Digital, in turn, has met its burden of production by proffering a legitimate non-discriminatory reason for its decision to terminate Caradonna. Specifically, it asserts that it terminated Caradonna because (1) the company needed to revise

its policy to conform to Compaq's policy; and (2) when it amended the policy it did not consider the effect that it would have on the ability of disabled workers to continue to accrue benefits under the pension plan. See Aff. of Elaine Beddome ¶¶ 3,4; Aff. of Anne M. Kiernan ¶ 12. This evidence is sufficient to permit a reasonable fact finder to conclude that Digital discharged him because he could not return to work rather than because it would cut off his right to accrue benefits under the pension plan.

Because Digital has satisfied its burden of production, the burden of proof remains with Caradonna to demonstrate that Digital terminated him with the purpose of interfering with his rights under the pension plan. When the evidence Caradonna has marshaled in establishing his prima facie case is construed in the light most favorable to him, it is sufficient to permit a reasonable jury to conclude that Digital terminated him to prevent him from continuing to accrue benefits under the company's pension plan. Alternatively, if the jury were to believe Digital's evidence, it reasonably could conclude that Digital properly terminated him because he could no longer work.

-31-

Under these circumstances, a genuine dispute exists as to a material fact that cannot be resolved through motions for summary judgment. Accordingly, I deny both Digital's motion and Caradonna's motion insofar as they apply to Caradonna's section 1140 claim.

## IV. CONCLUSION

For the foregoing reasons, I grant defendants' motion for summary judgment (doc. no. 24) insofar as it applies to all counts except Count VIII. Caradonna's motion for partial summary judgment (doc. no. 26) is denied in its entirety.

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

June   , 2000

cc:  Steve Gordon, Esq.
     Wilfred Benoit, Esq.
     Peter Anderson, Esq.